[No. 16328.    Department Two.    August 9, 1921.]

THE STATE OF WASHINGTON, *on the Relation of Sarah B.
Foley et al., Respondents,* v. CLAUDE C. RAMSEY
*et al., as County Commissioners of King
County, Appellants.*[1]

MANDAMUS (31, 35)—ACTS OF PUBLIC OFFICERS—COUNTY BOARD—
MATTERS OF DISCRETION.  Mandamus will not lie to compel the board
of county commissioners to act upon a petition for a rehearing of
their order establishing a drainage district, upon an allegation that
the order was based upon a mistake of fact, as to the existence of a
protest against the establishment of the district, where it does not
clearly appear that the order had been entered by mistake under
such circumstances as would make it the duty of the board to cor-
rect the mistake, and that they, arbitrarily and without the exer-
cise of any discretion, have refused to take the steps necessary to
make the correction.

Appeal from an order of the superior court for King
county, Tallman, J., entered December 7, 1920, direct-
ing the board of county commissioners to proceed to
a rehearing upon a petition for the establishment of a
drainage district.  Reversed.

*Fred C. Brown* and *Howard A. Hanson,* for appel-
lants.

*Elias A. Wright, Sam A. Wright, Jay C. Allen,* and
*S. H. Steele,* for respondents.

TOLMAN, J.—On or about February 18, 1918, certain
owners of property in the Snoqualmie Valley, in King
county, filed a petition with the county commissioners
of that county, seeking to have a drainage district es-
tablished under the provisions of Rem. Code, § 4226.
Thereafter the preliminary work was done apparently
as required by the statute, and on January 6, 1920, the
county engineer filed with the clerk of the board of

[1]Reported in 199 Pac. 978.

county commissioners his report covering the matters which the statute requires, and recommending the establishment of a drainage district as prayed for in the petition theretofore filed, whereupon the board of county commissioners fixed a time and place for a hearing upon such petition and report, and gave notice thereof by publication in the official newspaper of King county for the time and in the manner which the statute directs. Pursuant to such notice, a hearing was had at the office of the board on February 9, 1920; no one in any manner appearing in opposition, or then protesting, the board entered its order establishing the drainage district.

Thereafter, on March 25, 1920, respondents, as relators, filed their petition in the superior court, in which they alleged, among other things, that, shortly after the petition for the establishment of the drainage district was filed with the board of county commissioners, they employed an attorney to represent them as protestants; that a protest was prepared, signed by more than thirty-five of the property owners of the district, which protest was turned over to the attorney, and afterwards by him duly filed with the clerk of the board of county commissioners; that such attorney continued in charge of their interests, and they relied upon him to notify them of any hearing ordered, so that they might appear in support of their protest; that, during a period of practically two years which intervened between the filing of the petition for the drainage district and the filing of the report of the county engineer, their attorney so employed kept constantly in touch with the board of county commissioners, examined the files from time to time, kept himself acquainted with the situation, so that if a hearing were ordered a proper showing might be made; visited the

office of the county commissioners more than fifty times during such period, and that such attorney was informed by the clerk of the board and by the board that he would receive notice from them of the time of the hearing, if one were ordered, so that his clients might be heard; that, in January, 1920, the attorney representing petitioners became ill with pneumonia, was confined to his bed and was unconscious for a considerable length of time, and from the time of so becoming ill until after the hearing on February 9, was wholly unable to give any attention to business; that the notice published by order of the county commissioners fixing the date of the hearing was published in remote country newspapers of limited circulation and many miles from the residences of petitioners; were not seen by petitioners, who had no knowledge or notice of said hearing, and no notice thereof was given to their attorney, and neither petitioners nor their attorney had any knowledge of such hearing until after the same had taken place, when they learned of the results of such hearing through the news columns of the daily newspapers.

It is further alleged that the written protest which had been filed with the clerk of the board was never placed in the records and files of the proposed drainage district; was lost, or had disappeared before the day of the hearing, and that such protest was not in any manner considered by the board at such hearing, and the fact that such written protest had not been properly filed and was lost was unknown to petitioners and their attorney; that, upon learning that the hearing had been had and the order entered establishing the drainage district, petitioners immediately went to the city of Seattle, and there discovered that their attorney was ill, confined to his home under a doctor's care, and not in condition to attend to business or to

see them; that petitioners immediately employed other counsel and went before the board of county commissioners, advised them fully of the situation, and that the board gave them until the next day in which to file a petition for a rehearing; that, accordingly, relators, on the next day, duly filed with the board of county commissioners their written petition setting forth all the facts and in great detail the grounds of their objections to the establishment of the district, and the reason for their non-appearance at the time of the hearing, and prayed that a rehearing be granted, and offered to pay in cash the expense incident to such rehearing, or furnish a bond conditioned for the payment by them of all such expenses. Many other allegations are made which, if true, tend to show that a grave injustice was done to the relators by the entry of the order establishing the drainage district; but, as all such allegations are denied, and as, if true, they form no basis for a decision in the present state of the record, we find it unnecessary and useless to set them forth in detail.

Relators further allege that their petition for rehearing was brought on for hearing before the board in open session, at which time the members of the board individually admitted the facts and circumstances alleged, and the justice and merit of the relators' demands, but decided that the board had no legal right or authority to open up the matter and grant a rehearing, and upon advice of counsel, the board refused to either grant such petition or to deny the same, but ordered it placed on file. Relators further alleged that they have no other remedy, and that they will be able to establish all of the facts set forth in their petition for a rehearing if one be granted, and prayed for a peremptory writ of mandate directing

the board of county commissioners to hear their petition and grant or deny the same.

A show cause order was duly issued to the county commissioners as defendants, and after their demurrer had been overruled they answered, denying all of the material allegations of the petition, and pleading affirmatively, first, that the relators had appealed from the order of the board of county commissioners entered on February 9, 1920, establishing a drainage district, to the superior court for King county, and that the appeal was then pending; and for a second affirmative defense, set up all of the steps taken by them under the petition for the establishment of the drainage district, showing that the board had proceeded duly and regularly in the matter; that no protests, either oral or written, had ever been made or filed, and, while admitting that a petition for rehearing had been filed after the entry of the order establishing the district, alleged that such petition is not authorized by law, and had no legal effect. Relators duly replied, placing in issue many of the facts pleaded in the second affirmative answer, and thereafter the cause coming on for hearing, the defendants moved for judgment on the pleadings, which motion was denied, and thereupon, without taking any testimony, an order was entered directing the board of county commissioners to fix a time and place for the hearing of relators' petition for a rehearing, and to proceed to a hearing of such petition and to either grant or deny the same; from which order this appeal is prosecuted.

Relators seem to rely chiefly upon the case of *State ex rel. Ross v. Headlee,* 22 Wash. 126, 66 Pac. 126, where it was said:

"The general powers of the county commissioners are extensive, under the statute. They are the financial

18—116 WASH.

agents of the county, and it would be a harsh rule to lay down that a mistake which they had made in the transaction of their business could not be rectified. It is a matter of common knowledge that the members of boards of county commissioners are not, as a rule, technical lawyers, and of necessity their acts are more or less informal, and cannot be expected to meet the requirements of technical exactness which characterizes the actions of superior courts; and the proper administration of the law intrusted to their care demands a liberal construction of their acts, to the end that substantial justice shall be attained. We think the commissioners in this case had authority to revoke their former action and to make a levy in accordance with the business necessities of the county, as it was made to appear to them.''

It will be observed that the court was there dealing with the general powers of the county commissioners as the financial agents of their county, and not with special powers as here granted by a particular statute for a particular purpose, and further, there a writ was sought not to compel the commissioners to make an order rectifying an alleged or even an admitted mistake, but the writ was directed to the auditor requiring him to carry into effect an order already made by the commissioners—a very different situation, controlled by very different principles of law.

But, assuming that the *Ross* case holds that the county commissioners may, in all cases where they have made a mistake, rectify it by a subsequent order, still it does not meet the present situation. Respondents assert that, notwithstanding the denials in their answer, appellants admitted upon the trial below all of the allegations of their petition. This contention is strenuously denied by appellants, and as we can find no support for it in the record, we must assume that no admissions were made except as shown by the plead-

ings.   This being the situation, it does not now appear
from the record that the county commissioners made
any mistake.   Upon a trial of the issues it might appear
that the respondents never made or filed any written
protest, and that their present situation is due wholly
to their own neglect and carelessness; or, if it should
appear otherwise, it might also appear that the county
commissioners never had any knowledge or notice of
such protest, proceeded regularly in all respects, made
no mistake, either of fact or law, or if so, have, in the
exercise of a proper discretion, determined that the
final results must be the same in any event, and hence
have not abused their discretion (if they be entitled to
exercise discretion) in refusing to grant a rehearing.

Treating a mistake as one of fact as distinguished
from an error of judgment, and assuming, without de-
ciding, that the commissioners may, and in a proper
case should, correct an order made by mistake, still,
before a mandate may issue directing the appellants
to hear the petition for a rehearing, it must clearly ap-
pear that the original order was entered by mistake
under such circumstances as to make it the duty of the
commissioners to correct that mistake, and that they
have, arbitrarily and without the exercise of any dis-
cretion, refused to take the steps necessary to make
the correction.   *State ex rel. Godfrey v. Turner,* 113
Wash. 214, 193 Pac. 715, and cases there cited.

For the reasons given, the order appealed from is re-
versed.

PARKER, C. J., MAIN, MITCHELL, and BRIDGES, JJ.,
concur.